IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID ALLEN IPPOLITO,

        Plaintiff,

3:11-CV-676-PK

FINDINGS AND
RECOMMENDATION

v.

JOE DECAMP, KEVIN HORMAN,
GREGORY KANNE, TAGALOA MANU,
JOHN SMITH, NICOLAS FROST,
RICHARD LADEBY, CODY YEAGER,
BILL WORKMAN, LUCINDA
DROEGEMEIER, and CHRISTINE
COLEMAN,

        Defendants.

PAPAK, Magistrate Judge:

        Plaintiff *pro se* David Allen Ippolito filed this action against Joe DeCamp and Mark Nooth on June 3, 2011, at a time when Ippolito was an incarcerated prisoner housed in the Deer

Page 1 - FINDINGS AND RECOMMENDATION

Ridge Correctional Institution ("DRCI"). Ippolito amended his complaint effective February 21, 2012, and amended his complaint a second time effective December 21, 2012. By and through his second amended complaint[1] (#46-1), Ippolito abandons his claims against former defendant Nooth, and alleges the liability of defendants DeCamp, Kevin Horman, Gregory Kanne, Tagaloa Manu, John Smith, Nicolas Frost, Richard Ladeby, Cody Yeager, Bill Workman, Lucinda Droegemeier, and Christine Coleman for the violation of his constitutional rights during the period of his incarceration at DRCI. This court has federal-question jurisdiction over Ippolito's claim pursuant to 28 U.S.C. § 1331.

Now before the court are defendants' unenumerated Federal Civil Procedure Rule 12(b) motion (#74) to dismiss Ippolito's claim for failure to exhaust available administrative remedies and defendants' motion (#77) for summary judgment. I have considered the motions and all of the papers and pleadings on file. For the reasons set forth below, defendants' unenumerated Rule 12(b) motion should be granted, Ippolito's claim should be dismissed with prejudice, and defendants' summary judgment motion should be denied as moot.

## LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA"), incarcerated plaintiffs are required to exhaust all administrative remedies available to them within the institutions in which they are housed before bringing any federal action in connection with prison conditions, including such actions brought under 42 U.S.C. § 1983:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

---

[1] The parties refer to Ippolito's second amended complaint as his third amended complaint.

Page 2 - FINDINGS AND RECOMMENDATION

> other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, actions brought with respect to "prison conditions" include all actions brought to challenge isolated episodes of unconstitutional or otherwise unlawful misconduct of any kind as well as prisoner petitions challenging conditions of confinement. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Under the PLRA, the courts lack discretion to consider claims challenging prison conditions, including claims for money damages, except where such claims are filed following complete exhaustion of available administrative remedies, without regard to the nature of the available administrative remedies and without regard to the types of remedies available under such administrative grievance procedures. *See id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 739, 740 n. 5, 741 (2001).

Inmates are not required to plead or demonstrate exhaustion before bringing prison-conditions lawsuits. *Jones v. Bock*, 549 U.S. 199, 216 (2007). To the contrary, an incarcerated plaintiff's failure to satisfy the PLRA exhaustion requirement is an affirmative defense that is the burden of the defendant in a prison-conditions lawsuit to raise and prove. *See id.* The courts of the Ninth Circuit treat failure to exhaust administrative remedies "as a matter in abatement, . . . subject to an unenumerated Rule 12(b) motion" to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding an unenumerated Federal Civil Procedure Rule 12(b) motion to dismiss for failure to exhaust available administrative remedies, "the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120. "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.*

Page 3 - FINDINGS AND RECOMMENDATION

The PLRA exhaustion requirement is applicable to all persons who are incarcerated at the time they file their civil actions, without regard to whether they may subsequently be released from custody prior to resolution of their claims. *See Cox v. Mayer*, 332 F.3d 422, 424-428 (6th Cir. 2003); *see also Talamantes v. Leyva*, 575 F.3d 1021, 1023-1024 (9th Cir. 2009).

## FACTUAL BACKGROUND[2]

Ippolito was in the custody of the Oregon Department of Corrections ("ODOC") from approximately April 2006 through July 2012, and was housed at the Deer Ridge Correctional Institution from October 7, 2008 through June 25, 2011. At DRCI, Ippolito had available to him a three-level grievance procedure consistent with the regulations set forth in Chapter 292, Division 109 of the Oregon Administrative Rules.

Pursuant to the DRCI grievance procedure and applicable Oregon Administrative Rules, "[i]f an inmate is unable to resolve an issue through informal communications, [the] inmate may seek resolution of the issue by submitting a written grievance using the department's approved inmate grievance form (CD 117)." OAR-291-109-0140(1)(a). Any such grievance "must include a complete description of the incident, action, or application of the rule being grieved, including date and approximate time," and should be accompanied by any referenced documents. OAR-291-109-0140(1)(b). Matters, actions, and incidents that an inmate may properly grieve are the "misapplication of any administrative directive or operational procedure," the "lack of an administrative directive or operational procedure," any "unprofessional behavior or action which may be directed toward an inmate by an employee or volunteer of [ODOC] or the Oregon

---

[2] Except as otherwise indicated, the following recital of material facts constitutes my construal of the evidentiary record for purposes of defendants' unenumerated Federal Civil Procedure Rule 12(b) motion.

Page 4 - FINDINGS AND RECOMMENDATION

Corrections Enterprises," any "oversight or error affecting an inmate," any "program failure as defined in . . . OAR-291-077-0020," except where such failure was caused by the inmate's misconduct, or the "loss or destruction of [the inmate's] property. . . ." OAR-291-109-0140(2). "An inmate grievance may request review of just one matter, action, or incident per inmate grievance form." OAR-291-109-0140(1)(d). Similarly, inmates are not permitted to grieve the actions of more than one ODOC employee through a single grievance form, but rather must file one grievance form per ODOC employee whose actions are the subject of the inmate's challenge. *See* OAR-291-109-0140(3)(e). In addition, inmates are not permitted to grieve any claim or issue "that the inmate is pursuing in pending litigation in state or federal courts." OAR-291-109-0140(3)(f). A grievance will not be processed unless it is received by the applicable grievance coordinator on form CD 117 "within 30 calendar days of the date of the incident giving rise to the grievance." OAR-291-109-0150(2).

Upon receipt of an inmate grievance, the applicable grievance coordinator is required to "assign the grievance a number and record its receipt in an inmate grievance log" and to "send a grievance receipt to the inmate." OAR-291-109-0160(1) and (1)(a). The grievance coordinator is then required to coordinate with the ODOC employee best suited to respond to the grievance, and to send the inmate's grievance to that person "for reply." OAR-291-109-0160(1)(b). The response must "be returned to the grievance coordinator for processing within 21 calendar days." OAR-291-109-0160(1)(c). Following such processing, the grievance coordinator is required to send the inmate copies of both the grievance and the response, and to retain copies for the grievance coordinator's files, all within "45 days from the date the grievance was received" by the grievance coordinator, "unless further investigation is necessary." OAR-291-109-0160(2). In the

Page 5 - FINDINGS AND RECOMMENDATION

event the grievance coordinator fails to complete processing of the grievance within 45 days of its receipt, "the grievance coordinator will make an effort to notify the inmate of the status of the grievance." *Id.* "If the inmate does not receive a response within the allotted time frame, he/she may contact the grievance coordinator." *Id.*

"If at any time the grievance coordinator determines the inmate has pursued his/her grievance through state or federal courts, the grievance process will cease and the grievance will be returned to the inmate." OAR-291-109-0160(4). "A grievance that has been returned to [an] inmate by the grievance coordinator for procedural reasons cannot be appealed." OAR-291-109-0160(5).

An inmate may appeal the institutional response to the inmate's grievance by and through "the grievance appeal form (CD 117c)." OAR-291-109-0170(1)(a). Any such appeal "must be submitted to the grievance coordinator together with the original grievance, attachments, and staff response(s)." *Id.* The scope of the originally submitted grievance cannot be expanded on appeal, and the inmate is not permitted to add new information regarding the grieved incident on appeal, except where such information was unavailable to the inmate at the time the original grievance was filed. *See id.* Any such appeal must be received by the grievance coordinator "within 14 days from the date that the grievance response was sent to the inmate from the grievance coordinator." OAR-291-109-0170(1)(b). The grievance coordinator is required to send the appeal to the "functional unit manager," who is required to respond to the appeal "within 30 calendar days." *Id.* The grievance coordinator is then required to send the functional unit manager's appeal response to the inmate. *See* OAR-291-109-0170(2)(c).

In the event an inmate wishes to appeal the functional unit manager's decision regarding a

Page 6 - FINDINGS AND RECOMMENDATION

grievance appeal, the inmate may do so "using the grievance appeal form (CD 117c)." OAR-291-109-0170(2)(a). Any such appeal "must be submitted to the grievance coordinator together with the original grievance, attachments, staff responses, and documentation related to the first grievance appeal." *Id.* The grievance coordinator must receive any such appeal "within 14 calendar days from the date that the first grievance appeal response was sent to the inmate from the grievance coordinator." OAR-291-109-0170(2)(c). As with the first appeal, appeal of the functional unit manager's response cannot expand the scope of the original grievance, and cannot adduce new information regarding the originally grieved incident, except where such information was unavailable to the inmate at the time the original grievance or first appeal was filed. *See* OAR-291-109-0170(2)(a). The grievance coordinator is required to forward any such appeal to "the Assistant Director having authority to review and resolve the issue." *Id.*

The applicable Assistant Director is required to respond to any such appeal from a functional unit manager's grievance appeal response "within 30 calendar days." OAR-291-109-0170(2)(c). "The Assistant Director's . . . decision on an inmate's grievance appeal is FINAL, and is not subject to further [administrative] review." OAR-291-109-0170(2)(d).

Ippolito alleges that during the time he was housed at DRCI, he was "subjected to a policy of discrimination enacted, enforced, and encouraged by DRCI staff." Specifically, Ippolito alleges that he was discriminated against based on his status as a convicted sex offender. He alleges that he was discriminated against by being denied access to vocational training, parenting programs, and institutional jobs made available to inmates not convicted of sex crimes, by being denied requested cell or bunk transfers, and by permitting gang members to harass,

Page 7 - FINDINGS AND RECOMMENDATION

bully, and extort him. Ippolito alleges that he attempted to grieve one such incident, from December 2010, in which defendant Correctional Officer Droegemeier ordered Ippolito to eat his lunch at a chow hall table "owned" by inmates affiliated with a gang, and Ippolito "dumped" his tray rather than sit at the table.

According to the evidence of record, Ippolito's allegation that he grieved the December 2010 chow hall incident is correct. On or around December 16, 2010, Ippolito filed a grievance regarding the incident. Ippolito's grievance was initially rejected without processing because Ippolito appeared to be grieving a "conduct order" for which a separate "internal review process" was available. Ippolito resubmitted his grievance with some minor changes, and it was stamped "accepted" on December 21, 2010. Both defendant Droegemeier and defendant Workman responded to Ippolito's resubmitted grievance on official grievance response forms, declining to take any action on his grievance. Ippolito did not appeal either Droegemeier's or Workman's response.

Other than the incident of December 2010, the evidentiary record indicates that Ippolito did not grieve any of the other incidents, practices, conduct, or conditions of confinement he now complains of.

## ANALYSIS

The statutory and constitutional underpinnings of Ippolito's claim are not perfectly clear. As to its constitutional underpinnings, Ippolito alleges that the complained-of conduct violated his rights under the "Equal protections and Immunities Clause" of the Fourteenth Amendment and the "equality of privileges and immunities" protections of Article I, Section 20 of the Oregon constitution. However, analysis of Ippolito's claims suggests that Ippolito may intend to state a

claim for violation of his rights under the Eighth Amendment in connection with the December 2010 incident, and otherwise to allege violation of his rights under the equal protection clause of the Fourteenth Amendment.

It is well settled that individuals may not bring claims directly under constitutional provisions. Ippolito's complaint is silent as to any statutory authority for bringing his claim against the defendants. It appears that Ippolito intends to establish the defendants' liability for the violation of his constitutional rights under 42 U.S.C. § 1983, which would provide such authority.

Assuming without deciding that Ippolito has properly alleged a Section 1983 claim against the defendants arising out of the alleged violation of his Fourteenth and/or Eighth Amendment rights, this court lacks authority to consider the merits of any such claim under the Prison Litigation Reform Act. As noted above, under the PLRA incarcerated plaintiffs are required to exhaust all administrative remedies available to them within the institutions in which they are housed before bringing any federal action in connection with prison conditions, including actions brought under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a). Under the PLRA, the courts lack discretion to consider claims challenging prison conditions, including claims for money damages, except where such claims are filed following complete exhaustion of available administrative remedies, without regard to the nature of the available administrative remedies and without regard to the types of remedies available under such administrative grievance procedures. *See Porter*, 534 U.S. at 524, *citing Booth*, 532 U.S. at 739, 740 n. 5. For purposes of the PLRA, "complete exhaustion" of available administrative remedies requires that an inmate "complete the administrative review process in accordance with [all] applicable procedural rules,

Page 9 - FINDINGS AND RECOMMENDATION

including deadlines. . . ." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009), *quoting Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

Ippolito makes no showing and does not claim that he grieved any issue underlying his claim against the defendants other than the incident of December 2010, and makes no showing and does not claim that he took advantage of appeal procedures available to him in connection with the responses to his December 2010 grievance. Instead, Ippolito offers the following arguments in support of his position that he either satisfied the PLRA exhaustion requirement or that the requirement is inapplicable to his claim: first, that there was no grievance procedure available for his claim, which he characterizes as sounding in discrimination; second, that he "refiled" one or more grievances immediately before filing his complaint in this action; third, that he filed a tort claim notice pursuant to Or. Rev. Stat. 30.275, foreclosing further administrative remedies; and fourth, that he made informal complaints regarding the conduct and treatment complained of in this action despite not filing formal grievances regarding the same.

Ippolito's first argument is incorrect as a matter of law. While it is correct that, pursuant to O.A.R. 291-109-0140(3)(b), no grievance procedure would have been available to Ippolito had he brought a complaint of discrimination based on "race, gender, color, national origin, religion, age, marital status, or disability" (for which a "separate internal departmental appeal or review process" would have been available under O.A.R. 291-006-0005(2)), it is clear that the review process available under O.A.R. 291-006-0005(2) was not available to Ippolito for claims of discrimination based on his status as a sex offender, and that such claims were within the scope of the ordinary grievance process pursuant to O.A.R. 291-109-0140(2).

Ippolito's second argument is not supported by any evidence of record, and in any event

would be inapposite even if it were established that Ippolito had in fact "refiled" one or more grievances in addition to those discussed above. The mere act of filing a grievance does not exhaust available administrative remedies: exhaustion occurs only when the last available appeal from the grievance is complete, where the prisoner has already received all available remedies through the administrative process, or where the prisoner "has been reliably informed by an administrator" that no further remedies are available. *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005). In the absence of any showing that Ippolito received all available remedies or was advised that further pursuit of the grievance procedure would be futile, merely "refiling" one or more unspecified grievances does not satisfy the PLRA requirement.

Ippolito's third argument is likewise both unsupported by evidence of record and inapposite. There is a complete absence of evidence that Ippolito ever filed any material notice of tort claim. Moreover, I am aware of no statutory or case-law support for the proposition that avoiding grievance procedures by filing a notice of tort claim can under any circumstances constitute exhaustion of available administrative remedies.

Ippolito's fourth and final argument is incorrect as a matter of law. Assuming *arguendo* that Ippolito in fact informally complained of all of the conduct underlying his claim prior to bringing this action, informal complaint does not exhaust available administrative remedies where formal grievance procedures are available.

In consequence, it is clear that Ippolito failed to exhaust grievance procedures available to him before filing this action, and that this court therefore lacks authority to consider the merits of his claim. Moreover, because Ippolito is now time-barred from pursuing the grievance procedures formerly available to him, *see* OAR-291-109-0150(2), it is appropriate that his claim

Page 11 - FINDINGS AND RECOMMENDATION

be dismissed with prejudice, *see Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) ("dismissal with prejudice, when remedies are no longer available, is required in the absence of any justification for not pursuing such administrative remedies"), *quoting Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir. 2004) (internal modifications, quotation marks omitted); *Robinson v. U.S.*, 80 Fed. Appx. 494, 500 (7th Cir. 2003) (where exhaustion of administrative remedies is not procedurally possible, dismissal of a prisoner's claims with prejudice for failure to exhaust is appropriate) (unpublished disposition); *Loos v. Or. Dep't of Corr.*, Case No. 3:11-cv-00208-BR, 2012 U.S. Dist. LEXIS 14070, *10-13 (D. Or. Feb. 6, 2012); *Mitchell v. Diazon*, Case No. C10-2075-RAJ-BAT, 2011 U.S. Dist. LEXIS 146251, *16-18 (W.D. Wash. Oct. 31, 2011).

For the foregoing reasons, defendants' unenumerated Rule 12(b) motion to dismiss should be granted, and Ippolito's claim should be dismissed with prejudice. In consequence, defendants' motion for summary judgment should be denied as moot.

## CONCLUSION

For the reasons set forth above, defendants' unenumerated Rule 12(b) motion (#74) to dismiss for failure to exhaust administrative remedies should be granted, Ippolito's claim should be dismissed with prejudice, and defendants' motion (#77) for summary judgment should be denied as moot. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 25th day of March, 2013.

*/s/ Paul Papak*

Honorable Paul Papak
United States Magistrate Judge